UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK M. L.

                                **Plaintiff,**                           22-CV-00126-HKS

v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #12.

## BACKGROUND

On April 3, 2018, plaintiff, at the age of 47, protectively filed applications for Title II Social Security Disability benefits and Title XVI Supplemental Security Income benefits. Dkt. #6, pp. 329-341.[1] Plaintiff alleged an onset date of January 12, 2018. Dkt. #6, p. 363.[2]

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] However, in applications plaintiff filed on May 4, 2018, plaintiff alleged that his disability began on January 26, 2018. Dkt. #6, pp. 329, 335. This discrepancy is not material to the outcome of this matter.

In his Disability Report filed on May 5, 2018, plaintiff alleged he was disabled due to an ischemic stroke on 1/26/2018; high cholesterol; high blood pressure; the left side of his body being affected by the stroke; blood clot behind right eye; thrombosis of right carotid artery; cerebral vascular accident; diplopia; bladder wall thickening; and left side hemiplegia. Dkt. #6, p. 368. Plaintiff's claim was denied initially on August 21, 2018. Dkt. #6, pp. 93-94, 121-128.

Plaintiff requested a hearing, and a telephonic hearing was held on July 2, 2020 before Administrative Law Judge ("ALJ") Christine A. Cooke. Dkt. #6, pp. 57-74. Plaintiff appeared with counsel, Justine Miller, as well as a Spanish interpreter. Dkt. #6, p. 57.

Upon examination by the ALJ, plaintiff testified that he lives in Buffalo, New York with his oldest son and that he completed the eleventh grade of high school in Puerto Rico. Dkt. #6, pp. 63-64. He speaks a little English and can read and write simple sentences in English. Dkt. #6, p. 64. He also testified that he had been in the United States for two-and-a-half years. *Id.*

Plaintiff further testified that he worked in Puerto Rico from 2005 until 2016 as an industrial sewing machine operator on an assembly line making military clothing. Dkt. #6, pp. 65-66. He testified that he is 5' 8" tall, weighs approximately 140 pounds, and is right-handed. Dkt. #6, pp. 66-67.

On examination by his counsel, plaintiff testified that he stopped working in January 2018 because he had a stroke. Dkt. #6, p. 67. The stroke affected his left side—he has no strength in his left hand, which is numb, and he has weakness and problems with balance. *Id.* He used a cane after the stroke, but he no longer needs it. *Id.*

Plaintiff further testified that he takes an anticoagulant and aspirin and that he has undergone therapies. *Id.* He stated that he has improved, "but not enough." *Id.* He testified that he has involuntary movements with his left arm and hand, and they are always stuck in a stiff position. Dkt. #6, p. 68. He cannot lift heavy things with that arm. *Id.*

Next, plaintiff testified that he tried to work after the stroke, but he had to quit because he could not lift heavy things. *Id.* Sometimes he has problems holding lighter items.

Plaintiff testified that his left leg has improved quite a lot, but his major problem is his left hand, and he also has a clot behind his left eye, which makes his vision blurry. Dkt. #6, p. 69. He also has trouble reaching things that are high up. *Id.*

Plaintiff stated that he has problems with his memory, he forgets things frequently, and he had been going to counseling for about a year-and-a-half for depression and anxiety. Dkt. #6, p. 71.

With respect to daily chores, plaintiff testified that he can cook if he is careful, and sometimes his son helps. Dkt. #6, pp. 71-72. He sometimes needs help with fastening buttons and shaving. Dkt. #6, p. 72. He also testified that he had been in a car accident a few years prior, and he has a rod in his left leg. *Id.*

The ALJ then asked plaintiff whether the sewing machine work he performed in Puerto Rico was primarily sitting or standing, and plaintiff stated it was mostly sitting as the machines had foot pedals. Dkt. #6, pp. 72-73.

The ALJ then concluded the hearing so that plaintiff could submit additional medical records, which the ALJ stated she would provide to the vocational expert. Dkt. #6, p. 73.

On April 6, 2021, a supplemental telephonic hearing was held, with ALJ Cooke again presiding. Dkt. #6, pp. 75-92. Plaintiff was accompanied by counsel, Zachary Zabawa, and an interpreter.

The ALJ heard testimony from Denise Waddell, a vocational expert ("VE"). The ALJ noted that the VE had previously responded to a vocational interrogatory that had been placed in the record. Dkt. #6, pp. 86, 463-466. That interrogatory described plaintiff's past work as a sewing machine operator, which the VE classified as light exertion. Dkt. #6, pp. 87-88. Plaintiff did not object to that classification. Dkt. #6, p.88.

The ALJ then asked the VE to assume an individual of plaintiff's age, education, and experience who can sit for six out of eight hours; stand and walk for four out of eight hours; must have the ability to shift positions without leaving his duty station; and can lift, carry, push or pull 10 pounds frequently and up to 20 pounds occasionally. *Id.*

The ALJ added that the person should never climb ladders, ropes, or scaffolding; can occasionally climb stairs or ramps; is able to occasionally stoop, kneel, crouch, and crawl; is right-hand dominant and can occasionally finger, grasp, or handle and feel with his left upper extremity or hand; and should never be exposed to hazards such as dangerous machinery and unprotected heights. *Id.*

The VE opined that, with those restrictions, the individual could not perform plaintiff's past work. However, the VE testified that the person could perform the light unskilled jobs of router, collator operator, and price marker. Dkt. #6, pp. 88-89.

The ALJ then asked the VE: "Has your testimony today been consistent with the information contained in the Dictionary of Occupational Titles?" Dkt. #6, p. 89. The VE responded:

> Testimony has been consistent. I did supplement my testimony with my work experience in regard to shifting of positions and fingering, handling and feeling specific to the left upper extremity. Testimony has been supplemented with my work experience as this information is absent from the Dictionary of Occupational Titles and Selected Characteristics of Occupations.

Dkt. #6, p. 90.

Plaintiff's attorney then asked the VE whether, if the individual required a sit/stand option allowing him to alternate sitting and standing every 15 minutes, he could perform the three jobs the VE identified. The VE responded that he could not. Dkt. #6, p. 90.

Next, plaintiff's counsel asked if the individual was limited to incidental—less than 10%—use of his left upper extremity, he could perform the jobs identified by the VE. *Id.* The VE said he could not. *Id.*

Counsel then asked the VE what the maximum tolerance would be for absenteeism and time off task, and the VE stated that more than one absence per month and more than 10% time off task would be work preclusive. Dkt. #6, p. 91.

Finally, plaintiff's counsel asked if the person could be competitively employed in the national economy if the person required hourly reminders from supervisors to remain on task, and the VE said he could not. Dkt. #6, pp. 91-92. The hearing then concluded.

On June 25, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #6, pp. 27-45. The Appeals Council denied plaintiff's request for review on January 7, 2022, Dkt. #6, pp 7-14, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must

demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since January 12, 2018, the alleged onset date; (2) plaintiff has the severe impairments of status post cerebral vascular accident with deficits and hemiparesis affecting the left side; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[3], with the following limitations: he can sit for 6 out of 8 hours; he can stand and walk for 4 out of 8 hours; he must have the ability to shift

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

positions occasionally without leaving his duty station; he is able to lift, carry, push, or pull 10 pounds frequently and up to and including 20 pounds occasionally; he should never climb ladders, ropes, or scaffolding; he can occasionally climb stairs or ramps, stoop, kneel, crouch and crawl; he is right-hand dominant; he is able to occasionally finger, grasp/handle, and feel with his left upper extremity; and he should never be exposed to hazards, such as dangerous machinery and unprotected heights;  (5) plaintiff is unable to perform any past relevant work; and (6) considering plaintiff's age (47 at the time of application), education (limited), work experience, and RFC, plaintiff is able to perform the occupations of router, collator operator, and price marker; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from January 12, 2018, to the date of the ALJ's decision. Dkt. #6, pp. 27-37.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**
Plaintiff makes two narrow challenges to the ALJ's decision.

### *Step Five Analysis*

Plaintiff first argues that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to resolve this conflict, resulting in a decision not supported by substantial evidence. Dkt. #7-1, pp. 12-22.

"At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy." *Tafazwa S. v. Comm'r of Soc. Sec.*, 1:22-CV-10736-GRJ, 2023 WL 6390625, at *5 (S.D.N.Y. Oct. 1, 2023). "The Commissioner bears the burden of proof at this step." *Id.* (citations and internal quotation marks omitted).

In *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), the Court of Appeals for the Second Circuit explained that under a 2000 Social Security Administration Policy Interpretation Ruling, the Commissioner relies primarily on the DOT to determine whether a particular job can accommodate a claimant's limitations, but she may also use vocational experts to resolve complex vocational issues. *Id.* at 91 (citation and internal quotation marks omitted).

If the Commissioner considers the testimony of vocational experts, she must be alert to any apparent unresolved conflicts between their testimony and the DOT. *Id.* Further, the Commissioner has an affirmative responsibility to ask about any such

conflict and to elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony. *Id.*

Here, plaintiff argues that there was an unresolved conflict between the VE's testimony that plaintiff could perform the jobs of router, collator operator, and price marker—which require frequent reaching and either frequent or occasional fingering—and the RFC, which limited plaintiff to only occasional fingering, grasping/handling and feeling with his left upper extremity. Dkt. #7-1, pp. 12-22. The Court disagrees.

First, it is not disputed that the DOT, in defining the manipulative abilities in question, is silent as to whether they are required in all directions and with both arms.

Second, courts in the Second Circuit have repeatedly held that "where the DOT is silent on an issue such as overhead reaching, the VE's testimony on that issue is not in conflict." *Crespo v. O'Malley*, CIVIL ACTION NO.:22 Civ. 954 (SLC), 2024 WL 1255431, at *8 (S.D.N.Y. Mar. 25, 2024) (citations omitted). *See also Tameka G. v. Comm'r of Soc. Sec.*, 22-CV-06056, 2024 WL 2817600, at *5 (W.D.N.Y. June 3, 2024) (no conflict between plaintiff's 5% limitation for overhead reaching with her right arm and jobs requiring reaching; plaintiff was not limited in use of her left arm); *Crespo*, 2024 WL 1255431, at *8 (no conflict between plaintiff's inability to reach overhead with her left arm and VE's testimony that she could perform jobs requiring frequent reaching); *Peter L. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00341, 2024 WL 150098, at *4 (W.D.N.Y. Jan. 12, 2024) (no conflict between plaintiff's limitation to only occasional reaching with right

dominant arm and VE's testimony that he could perform jobs requiring frequent reaching; DOT did not indicate that jobs required ability to reach with both arms); *Tafazwa S.*, 2023 WL 6390625, at *6 (similar); *Malespin v. Kijakazi*, 22-CV-4087 (JLC), 2023 WL 4717958, at *12 (S.D.N.Y. July 25, 2023) (no conflict between jobs proposed by VE and RFC limiting plaintiff's exposure to excessive light; DOT did not mention excessive light); *Makeda T. v. Comm'r of Soc. Sec.*, 6:20-CV-06867 EAW, 2022 WL 4462237, at *7 (W.D.N.Y. Sept. 26, 2022) (no conflict between RFC and jobs identified by expert where definition of "light work" did not state that lifting and carrying requirements must be satisfied by a single arm); *Mandato v. Comm'r of Soc. Sec.*, 1:22-cv-04000, 2023 WL 6237683, at *13 (S.D.N.Y. Sept. 26, 2023) (no conflict with VE testimony and RFC because DOT did not address off-task limitations); *John B. v. Comm'r of Soc. Sec.*, Case # 19-cv-01113, 2021 WL 681283, at *4 (W.D.N.Y. Aug. 20, 2021) ("Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT.").

The Court recognizes that some courts have nonetheless found an apparent conflict between a VE's testimony and an RFC limitation on similar fact patterns. *See, e.g., Julio A.P. v. Kijakazi,* 23-CV-624-A, 2024 WL 3439503, at *3 (W.D.N.Y. July 17, 2024) (so holding and collecting cases).

Nonetheless, the Court believes it must be guided by authority from the United States Court of Appeals for the Second Circuit.

In *Colvin v. Berryhill*, 734 F. App'x 756 (2d Cir. 2018), the Court of Appeals held that substantial evidence supported the Commissioner's step five determination where the RFC limited the plaintiff—who was missing the distal tips of three fingers on his left hand—to occasional handling and no fingering with that hand. *Id.* at 759. The jobs identified by the VE, however, required either frequent handling or constant fingering. *Id.*

The Court found no conflict with the DOT definitions because "they do not state that a worker must be able to perform such handling or fingering with both hands, specifically, with a non-dominant hand as well as a dominant hand." *Id*. The Court further observed that "[t]he law recognizes that vocational experts may be useful in supplementing the definitions in such circumstances," and that the vocational expert's testimony that the plaintiff could meet the manipulative requirements of the jobs notwithstanding the limitations on his left hand supported the Commissioner's step five conclusions. *Id.*

Other courts in this Circuit have relied on *Colvin* to find no conflict between an RFC with limitations on one side of plaintiff's body and DOT listings or regulations that are silent as to whether the use of both extremities is required. *See, e.g., Crespo*, 2024 WL 1255431, at *8 (citing *Colvin* and stating: "In any event, while the DOT definitions of these three jobs suggest that a worker would need to engage in frequent handling, they do not state that the worker must be able to perform those tasks with both hands simultaneously."); *Makeda T.*, 2022 WL 4462237, at *7 (citing *Colvin* and finding no

conflict where definition of "light work" does not state that plaintiff must be able to lift and carry with a single arm).

More recently, the Court of Appeals considered an alleged conflict between the DOT and the plaintiff's need for a sit/stand option, use of a cane, and tinted glasses. *Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774 (2d Cir. June 6, 2023) (summary order). The Court held, in part: "The ALJ did not err because these limitations do not conflict with the Dictionary, *which the parties agree does not include these limitations*." *Id.* at *4 (emphasis added). The Court thus concluded that the ALJ's step-five determination did not run afoul of *Lockwood* with respect to these limitations. *Id.*

Additionally, as this Court has previously noted, *Lockwood* is distinguishable from cases, such as this, where the physical limitation in question pertains only to one side of the plaintiff's body because *Lockwood* involved an RFC that excluded *all* overhead reaching tasks with both hands. *Tameka G.*, 2024 WL 2817600, at *6. *See also John B.*, 2021 WL 681283, at *8 ("Unlike the facts in *Lockwood*, [the ALJ's] RFC did not preclude plaintiff from all reaching but limited him to occasional overhead reaching with the right arm only.").

Finally, as the above discussion indicates, the VE testified that her opinions were consistent with the DOT—which is silent on the unilateral/bilateral issue—and that her job analysis was supplemented by her professional work experience. Dkt. #5, p. 61. Thus, even if an apparent conflict existed, such testimony was sufficient to resolve it.

*Robert P. v. Comm'r of Soc. Sec.*, 1:23-CV-00975, 2024 WL 3173515, at *7 (W.D.N.Y. June 26, 2024); *Peter L.*, 2024 WL 150098, at *4; *Mandato*, 2023 WL 6237683, at *12-13; *Hallman v. Comm'r of Soc. Sec.*, CASE # 19-cv-00683, 2020 WL 3259255, at *5 (W.D.N.Y. June 16, 2020).

The Court thus concludes that the ALJ's step-five determination was supported by substantial evidence.

### *Sit/Stand Option in the RFC*

Plaintiff next argues that the ALJ failed to explain how she arrived at the sit/stand option she incorporated into the RFC. Dkt. #7-1, pp. 22-25.

"It is the ALJ's responsibility to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Terrence S. B. v. Comm'r of Soc. Sec.*, 1:22-cv0380, 2024 WL 4131237, at *3 (W.D.N.Y. Sept. 10, 2024) (citation and internal quotation marks omitted). "In doing so, an ALJ may not arbitrarily substitute [his/her] own judgment for competent medical opinion." *Id.*

"However, 'the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence.'" *Id.* (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)). In fact, where the record as a whole "contains sufficient evidence from which an ALJ can assess the

claimant's residual functional capacity. . . a medical source statement or formal medical opinion is not necessarily required." *Id.* (citations and internal quotation marks omitted).

Nor is it "necessary for the ALJ to find any particular medical opinion controlling or persuasive in order to make findings that are based upon substantial evidence." *Id.* at *4 (citing *Schillo*, 31 F.4th at 78). If the ALJ departs from such opinions, however, he must "use the treatment notes, diagnostic tests, medical opinions, and other 'data points' to identify 'with specificity' how the RFC was formulated." *Id.*

Having reviewed the record, the Court concludes that the ALJ adhered to these principles.

As noted above, the ALJ limited plaintiff to sitting for 6 hours out of 8 hours; standing and walking for 4 hours out of 8 hours; and she stated that he must be able to shift positions occasionally without leaving his duty station. Dkt. #6, p. 32.

In crafting the RFC, the ALJ began by reviewing the lingering effects from plaintiff's 2018 stroke, including weakness in his left leg and difficulty balancing. Dkt. #6, p. 33.

The ALJ then reviewed plaintiff's medical records, noting that he had been treated "relatively conservatively." Dkt. #6, p. 3. The records showed, however, that plaintiff had a mild imbalance with tandem walking, but he used no assistive devices. *Id.*

With physical therapy, medication, and exercise, plaintiff had shown continued improvement after his stroke. *Id.*

The ALJ also noted that plaintiff was able to perform a variety of activities: he reported riding his bike daily; engaging in social activities; taking walks; and was able to cook, clean, do laundry, shop, shower, and dress himself. Dkt. #6, pp. 34-35.

The ALJ then reviewed the opinion of state agency doctor J. Lawrence, who opined that plaintiff could stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday. Dkt. #6, pp. 32, 103. Dr. Lawrence also opined that plaintiff could sit (with normal breaks) for about 6 hours in an 8-hour workday. *Id.*

The ALJ found Dr. Lawrence's opinion that plaintiff could perform a range of light work "generally persuasive," but she stated that she believed additional limitations were demonstrated in the record and thus reflected in the RFC—presumably the limitation of standing and walking for only 4 hours in a workday, less than the 6 hours opined by Dr. Lawrence.

Finally, the ALJ considered the opinion of Dr. Nikita Dave, who performed a consultative physical examination of plaintiff. Dkt. #6, pp. 35, 510-514. Dr. Dave diagnosed plaintiff with "gait dysfunction" due to his stroke and opined that he may have "moderate" limitations for prolonged standing and walking. Dkt. #6, p. 513. The ALJ found

this opinion "not persuasive," however, because it was "mostly inconsistent with the record as a whole." Dkt. #6, p. 35.

It is well established that an ALJ "is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations." *Robert v. Comm'r of Soc. Sec.*, Case # 23-CV-1247-FPG, 2025 WL 934538, at *4 (W.D.N.Y. Mar. 27, 2025) (citations and internal quotation marks omitted).

That is what the ALJ did here. She reviewed the record, including varying medical opinions and evidence of plaintiff's activities and abilities, and she arrived at an RFC that is supported by substantial evidence. *See id.* at *5 (rejecting plaintiff's argument that ALJ failed to explain his inclusion of sit/stand option in RFC).

In sum, plaintiff "cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his position." *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (citation omitted). Instead, plaintiff "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*

"Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and Plaintiff fails to do so here." *Id.*

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         July 9, 2025

　　　　　　　　　　　　　　　　　　　　 s/ H. Kenneth Schroeder, Jr.
　　　　　　　　　　　　　　　　　　　　**H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**